UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Libna Guzman

On behalf of herself and
all others similarly situated

    Plaintiffs

    v.                                                                         Case No. _____

National Packaging Services, Corporation.

    Defendant.

## COMPLAINT

Plaintiffs, by their attorneys, for their Complaint against Defendants state as follows:

1. This is a collective action under the Fair Labor Standards Act, and an individual and class action under Wisconsin law by Plaintiffs, current and former hourly employees of the Defendant, to seek redress for National Packaging Services, Corporation's ("NPS")'s failure to pay to them overtime pay required by the FLSA and Wisconsin law.

### JURISDICTION AND VENUE

2. This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3. This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the identical facts, and therefore form the same case or controversy as their FLSA claims.

1

4. This Court has personal jurisdiction over the Defendant because a substantial portion of its business activities occur in the Eastern District of Wisconsin.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because all of the events giving rise to the claims described herein, in particular those events that pertain to the Named Plaintiff, occurred in this district.

## THE PARTIES

6. Named Plaintiff Libna Guzman is an adult resident of the State of Wisconsin who during the three years preceding the filing of this complaint first worked as a Machine Operator Helper, and then as a Machine Operator at the Defendant's facility located at Cudahy, Wisconsin. Plaintiffs are filing with the Court the FLSA consent form signed by Guzman.

7. Defendant NPS is a Wisconsin corporation operating numerous facilities located in the Eastern District of Wisconsin, specifically in Green Bay and Cudahy, Wisconsin.

8. NPS by virtue of its operations within Wisconsin is an employer within the meaning of Wis. Stat. §109.03(1). NPS is also an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203, by, for example, purchasing equipment, materials, and other supplies that were directly or indirectly produced outside Wisconsin, and by providing products and services to out-of-state customers. At all relevant times, NPS has had annual gross volume of business at or above $500,000.

## FACTS

9. At all of its facilities in Wisconsin, NPS made shift differential pay available to each of its hourly employees. The pay was offered for the inconvenience of working on a shift

2

perceived to be less desirable, rather than because the employees would perform two different types of work on the different shifts.

10. Upon information and belief Guzman, who was classified and paid by NPS as an hourly employee, would frequently during the past two years receive shift differential pay equal to 15 minutes of straight time pay for each workday, in which she worked in whole or in part on a shift different than her primary shift.

11. At all of its facilities in Wisconsin, NPS made attendance bonus pay available to each of its hourly employees.

12. The attendance bonus pay, which was promised to induce the employees to improve their attendance, became mandatory when the employees met the required defined standards to qualify for the bonuses.

13. During at least a portion of the time period that she worked for NPS within the last two years, Guzman received attendance bonus pay from NPS.

14. Like all machine operators employed by NPS at any of its facilities, at all times during the last two years Guzman was eligible for receiving bonus payments for exceeding the defined hourly standard for her classification and machine.

15. The production bonuses, which were promised by NPS to induce its machine operators to improve the speed of their work, became mandatory when the machine operators exceeded the defined standard for their classifications and machines.

16. During the past two years, and while working as a machine operator, Guzman qualified to receive at least one production bonus from NPS for exceeding the standard for her job classification and machine.

17. During the past two years Guzman, like all other hourly employees at NPS' Cudahy facility, frequently worked schedules that would require her to work 48 hours during a week, so that she frequently received overtime pay.

18. Based on online job advertisements posted by NPS, at NPS' Green Bay Facilities its hourly employees also frequently worked overtime by working, for example, four 12 hour shifts during some workweeks.

19. During workweeks that Guzman received shift differential pay, or earned a production bonus, or formed a portion of the time period for which Guzman received an attendance bonus for her good attendance during the time period, Guzman still received overtime pay equal to no more than 1.5 times her base hourly wage rate.

20. NPS thus applied to Guzman, just like it applied to each of its hourly employees at its Green Bay and Cudahy facilities, its uniform policy of excluding shift differential pay, production bonuses, and attendance bonuses when computing their regular rate for overtime pay.

## . COLLECTIVE ACTION ALLEGATIONS

21. Plaintiff brings her First Claim for Relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all other similarly situated NPS hourly employees whose shift differential pay and/or attendance bonuses were not included by NPS when computing their regular rate for overtime pay.

22. Plaintiff additionally brings her First Claim for Relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all other similarly situated Froedtert Machine Operators whose production bonuses were not included by NPS when computing their regular rate for overtime pay.

4

23. The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to Plaintiff and have claims similar to her first claim for relief.

24. The claims of the Named Plaintiffs are representative of the claims of members of the FLSA Class in that all members of the class were hourly paid employees of NPS who received shift differential pay, attendance bonuses, and/or production bonuses, and were subject to NPS' uniform policy of computing overtime pay as time and a half the employees' base rate of pay, so that shift differential pay, attendance bonuses, and production bonuses were excluded from the computation of the regular rate used to compute their overtime pay.

## CLASS ALLEGATIONS

25. Plaintiff seeks to represent a class of all employees of NPS who fall within any of the following two subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All hourly paid employees of NPS who, during the time period on or after November 22, 2017 received some shift differential pay or attendance bonus pay from NPS, and could have been scheduled to work more than 40 hours per week;
>
> All hourly paid machine operators of NPS who, during the time period on or after November 22, 2017 received some production bonus pay from NPS and could have been scheduled to work more than 40 hours per week.

26. The persons in the class identified above are so numerous that joinder of all members is impracticable. At any given time NPS would employ between 300-400 hourly paid employees including 80-150 machine operators, so that the proposed subclasses well exceed the threshold of 40 members that makes joinder impracticable.

27. There are questions of law and fact common to the Wisconsin Unpaid Wage Class (Rule 23 Class) that predominate over any questions solely affecting individual members of the class, including, but not limited to:

- (a). Whether the Plaintiffs' shift differentials were paid for the perceived inconvenience of working on a different shift, rather than because they performed different kinds of work on different shifts;

- (b). Whether the attendance and production bonuses were announced in advance to encourage NPS employees to improve their work performance;

- (c). Whether fact and/or payment of the attendance and production bonuses were guaranteed once the employees met the program eligibility requirements that were announced to the employees long before the payment of the bonuses;

- (d). How the employees' overtime pay should be computed after incorporating the attendance, production, and shift differential pay into their regular rates;

- (e). The employees' eligibility for liquidated damages, attorneys' fees and costs for the underpayments of overtime pay that they have experienced.

28. Plaintiff's claims are typical of those of the Rule 23 class in that she just like members of both of the proposed subclasses received attendance, production, and shift differential pay from NPS, but always had her overtime pay computed as time and a half her base wage rate, so that the attendance, production, and shift differential pay were never included in computing her overtime pay.

29. Named Plaintiff will fairly and adequately protect the interests of the Rule 23 class; and have retained counsel experienced in complex wage and hour litigation.

30. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendant's common and uniform policies and practices denied the Wisconsin Unpaid Wage Class the wages for work performed to which they are entitled. The damages suffered by the individual Wisconsin Unpaid Wage Class members are small compared

6

to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will permit the Court to resolve predominate legal questions that drive the resolution of this litigation while obviating the need for unduly duplicative litigation that might result in inconsistent judgments about the legality of the Defendant's pay practices.

**Count I.     Overtime Pay Claim Under the Fair Labor Standards Act.**

31.     Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1- 30 of the Complaint.

32.     NPS cannot utilize the exemption method outlined in §207(g)(2) of the FLSA to compute the Plaintiff's overtime pay when the Plaintiffs received different pay rates for performing the same work on different shifts, rather than for performing different kinds of work on different shifts.

33.     Shift differential pay paid to the Plaintiff for the inconvenience of working on a less desirable shift constitutes remuneration for employment that must be included in the computation of the Plaintiff's regular rate under §207(e) of the FLSA.

34.     Plaintiff therefore is entitled to receive overtime pay computed using her regular rate, with shift differential pay included in computing her regular rate.

35.     Production bonuses and attendance bonuses received by the Plaintiff must be included in the regular rate when the formulas used to compute the bonuses were announced to the plaintiff long before their payments, so that both the fact and amount of payment of the bonuses were guaranteed once the Plaintiff satisfied the formulas' requirements.

7

36. Alternatively, the production bonuses and attendance bonuses must be included in the regular rate when they were announced to employees by NPS in order to induce the employees to improve their work performance and attendance.

37. NPS therefore violated the FLSA by failing to use the regular rate, computed including the shift differential pay, production bonuses, and pro-rata portion of attendance bonuses the Plaintiff earned during each workweek, to compute the Plaintiff's overtime pay for each week.

38. NPS either knew or should have known that its method of computing the Plaintiff's overtime pay violated the FLSA, so that Plaintiff is entitled to recover, in addition to all overtime wages owed to her, an equal amount as liquidated damages; plus the application of a three years statute of limitations.

39. Plaintiff is entitled to recover from NPS her reasonable attorneys' fees and costs incurred in bringing this count of the Complaint.

**Count II.    Claim for Straight Time and Overtime Pay Under Wisconsin Law.**

40. Plaintiff re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 39 of the Complaint.

41. Because Wisconsin law uses the same concept of the "regular rate" as the FLSA, Plaintiff's shift differential pay, production bonuses, and attendance bonuses must be included in the regular rate under Wisconsin law for the same reasons why they must be included in the regular rate under the FLSA.

42. Plaintiff is entitled to overtime pay computed using her regular rate both because there is no equivalent to §207(g)(2) of the FLSA in Wisconsin law, and because in any event NPS cannot satisfy the prerequisites for invoking §207(g)(2) of the FLSA.

43. NPS therefore violated Wis. Stat. §109.03(1) and (5) by failing to pay to the Plaintiff, within 31 days of when the overtime wages were earned, all overtime pay required to be paid to her pursuant to DWD §274.03.

44. Pursuant to Wis. Stat. §109.03(5), Plaintiff is entitled to maintain a lawsuit against Froedtert for all straight time and overtime wages that they are entitled to but did not receive pursuant to Wis. Stat. §109.03 and DWD Chapter 274. In such a lawsuit they are also entitled to receive the 50% increased damages authorized by Wis. Stat. §109.11(2)(a) on all straight time and overtime wages that remain unpaid at the time of the filing of this lawsuit, along with their reasonable attorneys' fees and costs of prosecuting their claims as authorized by Wis. Stat. §109.03(6).

WHEREFORE, the Plaintiffs respectfully request the Court to enter an order that:

1. Finds that NPS is liable to the plaintiff and all members of the proposed collective action for all unpaid overtime pay, 100% liquidated damages, and attorneys fees and costs arising out of the Plaintiffs' claims under the Fair Labor Standards Act;

2. Finds that NPS is liable to the Plaintiff and all members of the proposed Rule 23 classes for all unpaid straight time and overtime wages that they are owed under Wisconsin law, plus 50% increased damages on all unpaid wages, plus their attorneys fees and costs arising out of the Plaintiffs' claims under Wisconsin law;

3. Grants to the Plaintiff such other and further relief as the Court deems just and proper.

Dated this 22nd day of November, 2019.

/s/Yingtao Ho
Yingtao Ho (State Bar No. 1045418)
yh@previant.com

Joe Sexauer (State Bar No. 1103206)
jms@previant.com
The Previant Law Firm S.C.
310 W. Wisconsin Ave. Suite 100MW
Milwaukee, WI 53212
(414) 271-4500
(414) 271-6308 (fax)

Consent to Opt In and
Participate as a Named Plaintiff in Suit for
Violations of Fair Labor Standards Act

I, Libna Guzman, hereby consents to participate in the lawsuit against my former employer National Packaging Services Corporation. ("Employer"). I understand that this consent will be filed simultaneously with a lawsuit against Employer to recover unpaid overtime compensation, liquidated damages, and other damages and relief available under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. This written consent is intended to serve as my consent in writing to join in this lawsuit and become a party plaintiff as required by 29 U.S.C. § 216(b).

During the last two years, Employer has failed to pay to me overtime pay required by the Fair Labor Standards Act.

By signing and returning this consent to sue, I understand that I will be represented by The Previant Law Firm, s.c.

Dated: 11/21/2019

Signed: *[signature]*