UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LIBNA GUZMAN,
on behalf of herself and
all others similarly situated,

            Plaintiffs,

  v.

NATIONAL PACKAGING SERVICES CORPORATION,

            Defendant.

Case No. 19-cv-1722-pp

---

**ORDER GRANTING JOINT MOTION FOR FINAL SETTLEMENT APPROVAL (DKT. NO. 48), GRANTING PETITION FOR ATTORNEYS' FEES AND CLASS REPRESENTATIVE INCENTIVE AWARDS (DKT. NO. 51), DENYING MOTION TO SEAL (DKT. NO. 54), ORDERING SPREADSHEET RESTRICTED, ORDERING PLAINTIFFS TO FILE A REDACTED VERSION OF THE SPREADSHEET AND DISMISSING CASE**

---

      Plaintiff Libna Guzman filed a collective and class action on behalf of herself and similarly situated hourly production employees who worked at the National Packaging Services (NPS) production facilities in Wisconsin. Dkt. No. 1. Magistrate Judge William Duffin facilitated resolution of the case, dkt. no. 38, and once the parties had filed their joint motion for a collective and class settlement and supporting brief, dkt. nos. 40 and 41, the court granted the motion for preliminary approval of the settlement, dkt. no. 44. The court scheduled a fairness hearing for June 2, 2022 at 9:30 a.m., <u>id.</u>, but the plaintiffs asked the court to reschedule it to give them additional time to complete their calculations allocating the settlement fund to the class

1

members, dkt. no. 45. The court granted the motion and rescheduled the hearing to July 6, 2022. Dkt. No. 46.

The plaintiffs since have filed a joint motion for settlement approval, dkt. no. 48, a motion for attorney fees and class representative incentive awards, dkt. no. 51, and a motion to seal the allocation of the individual awards, dkt. no. 54. The court has conducted the fairness hearing. Dkt. No. 55. The court will approve the settlement and award the fees. It will not grant the plaintiffs' request to seal the individual allocation chart, but will allow them to file a redacted version for public viewing and will restrict the unredacted version to viewing by the court and the parties.

## I. Joint Motion for Settlement Approval (Dkt. No. 48)

Both the FLSA collective action and the Rule 23 class action settlement require judicial approval. The Rule 23 class action settlement also requires a hearing—the court may approve it only after a hearing and on a finding that the settlement is fair, reasonable and adequate. Federal Rule of Civil Procedure 23(e)(2). The rule requires consideration of the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and

2

> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The considerations in the rule overlap with the factors articulated by the Seventh Circuit: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." Wong v. Accretive Health, Inc., 773 F.3d 859, 863 (7th Cir. 2014) (citations omitted); Fed. R. Civ. P. 23(e)(2).

### A. Adequacy of Representation—Rule 23(e)(2)(A)

The court previously appointed Libna Guzman as representative of the collective and Rule 23 classes. Dkt. No. 31 at 2. The court certified the following FLSA collective class and the Rule 23 class:

> All hourly production employees who worked at NPS's Wisconsin production facilities and were paid a shift differential, were paid a year-end bonus, or worked on a designated holiday during the time period of November 22, 2017 to the date of preliminary approval of this Settlement Agreement [March 3, 2022].

Dkt. No. 44. The court appointed Guzman to serve as the representative for the certified collective class and it is not aware of any conflicting interests between Guzman and the other class members. Class counsel, Yingtao Ho and the Previant Law Firm, have adequately represented the class throughout the litigation. With respect to the first factor, the court is satisfied that class is adequately represented.

3

B. <u>Arm's Length Negotiations and Non-Collusiveness of Settlement Process—Rule 23(e)(2)(B) and the Seventh Circuit's First Facto</u>

The Seventh Circuit has emphasized that the "most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." <u>Wong</u>, 773 F.3d at 863.

The plaintiffs asserted three claims: (1) that NPS should have included shift differentials in computing its hourly production employees' regular rate for overtime pay; (2) that NPS should have included year-end bonuses paid to some hourly production employees when computing their regular rate for overtime pay; and (3) that by failing to include shift differentials and year-end bonuses in computing the rate for its employees' worked holiday pay, NPS paid to its employees worked holiday pay less than time and a half their regular rate. Only the shift differential claim was largely undisputed. Dkt. No. 52 at 1. The parties asserted in their moving papers, and at the hearing, that there were "vigorous" disputes over whether the year-end bonuses must be included in the regular rate, whether worked holiday pay must equal time and a half the regular rate to qualify for exemption under §207(e)(6) of FLSA, and whether worked holiday pay that equals less than time and a half the regular rate may be offset from weekly overtime pay that NPS owes its employees. Dkt. No. 42 at 3, 4. The plaintiffs admit there is evidence that the bonuses were not promised—or announced—in advance and that NPS does not use defined criteria in deciding whether to award bonuses. Dkt. No. 42 at 8. Nevertheless, the parties negotiated a settlement worth ten times the value of the shift

4

differential claim (and only ten percent of the Class Fund is allocated to the shift differential claim). Dkt. No. 52 at 1.

Excluding attorney's fees of $32,000, the proposed settlement equals $55,500. The plaintiffs represent that the recovery amounts to more than 62%[1] of NPS' realistic maximum exposure of $89,000. Dkt. No. 42 at 3, 8. The court is satisfied that the parties negotiated at arm's length and in good faith, particularly when balancing the merits of the claim against the settlement.

C. Adequacy of the Relief Provided by the Settlement—Rule 23(e)(2)(C) and the Seventh Circuit's Second and Sixth Factors

When considering the adequacy of relief, Rule 23(e)(2) instructs the court to take into consideration the costs, risks and delay of trial and appeal, the effectiveness of the proposed method of distribution, the terms of any proposed award and the agreements made in connection with the settlement. Fed. R. Civ. P. 23(e)(2). Similarly, the Seventh Circuit looks to the complexity, length and expense of further litigation and the stage of the proceedings and the amount of discovery completed. Wong, 773 F.3d at 863.

Under the terms of the settlement, NPS will pay $87,500, along with the employer share of employment taxes on any payments treated as wages. Dkt. No. 41-1 at 3. The settlement fund will cover the attorney's fees and costs of no more than $32,000, liquidated damages and an incentive aware for Guzman not to exceed $5,000. Id. at 3-4. Class counsel also may apply to recover the costs of mailing the notice and consent form and the costs of mailing

---

[1] At the fairness hearing, plaintiffs' counsel referenced a slightly higher percentage.

settlement payments. Id. at 3. All remaining funds will be used to make payments. Id. at 4. The class fund will be constituted of 5/6 of the remaining amount; the FLSA Collective fund will be constituted of the other 1/6. Id. Eighty percent of the Class Fund will be allocated to class members who worked on a holiday; ten percent will be allocated to class members who were paid a shift differential; and ten percent will be allocated to class members who were paid a year-end bonus. Id. The collective fund will be allocated based on the number of members who opt in. Id. at 5.

        1.     *The Costs, Risks, and Delay of Trial and Appeal—Rule 23(e)(2)(C)(i)*

This case has been pending three years. The parties exchanged written discovery, took the deposition of the NPS corporate representative and briefed the plaintiffs' motion for FLSA certification; the plaintiffs filed a motion for Rule 23 class certification and the parties engaged in mediation. Dkt. No. 52 at 2. NPS provided additional information to the plaintiffs, which included time records for all employees of sample workweeks, including holiday workweeks, and time records for the week including the July 4, 2018 holiday. Dkt. No. 42 at 4. The parties are aware of the costs and uncertainties of trial and an appeal. Their decision to settle their claims allows the parties to avoid the costs associated with additional discovery and the time spent waiting for a ruling on class certification, briefing summary judgment, litigating the liability and damages for hundreds of class members, briefing any appeal and waiting on a ruling.

6

> 2. *The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims—Rule 23(e)(2)(C)(ii)*

NPS sent the list of prospective class members to class counsel, who then sent out class notices and opt-in consent forms to 727 prospective class members via first class mail on March 30, 2022. Dkt. Nos. 49 at 2; 50 at 1. Notices returned as undeliverable were remailed if there was a forwarding address or if a more recent address could be located through Westlaw's public records. Dkt. No. 49 at 7. Ultimately, class counsel was able to send the packages to 701 of the class members. Id.

Class counsel received 121 opt-in forms, one request for exclusion and no objections to settlement. Id. One class member, Frank Hayes, returned only the bottom half of the opt-in form; the parties have agreed to treat him as a member for purposes of calculating the payout. If Hayes does not timely return a form fifteen days after the court grants final approval, his share will be allocated to other collective members. Id. Class counsel has not asked the court to excuse any untimely filings because the untimely filings contained no explanation for the delay. Id.

NPS provided a spreadsheet to class counsel indicating (1) whether the individual opted into the FLSA Collective, (2) the number of holidays worked between November 22, 2017 and March 3, 2022, (3) whether the individual received any shift differentials during that time period, and (4) whether the individual received bonuses. The settlement makes $54,900 available for

distribution: $45,750 (5/6) will go to class members and $9,150 (1/6) will be available for collective members. Dkt. No. 49 at 4.

With respect to the class members, eighty percent ($36,600) is allocated based on the number of holiday hours worked during the relevant period; ten percent ($4,575) is allocated for distribution based on the whether the individual received shift differentials; and ten percent ($4,575) is allocated based on whether the individual received bonuses. Id. at 5. Class counsel reports that class members worked a total of 1,373 holidays so the distribution will be $36,600 x holidays worked by the class member/1,373 holidays worked by all Class Members. Id. A total of 689 class members received shift differentials so the calculation will be $4,575 x 1/689. Id. Finally, class counsel credited each of the 349 class members who received bonuses with a distribution of $4,575 x 1/349. Id.

There are 122 class members who opted into the FLSA collective class. Id. With a total collective fund of $9,150 available for distribution, the calculation is amount of class fund allocated to the collective member x $9,150/$8,992.14. Id.

The parties calculated representative plaintiff Libna Guzman's total collective fund and class fund payout as $254.97, so she requested a maximum incentive award of $4,745.03 ($5,000-$254.97). The parties calculated the total amount payable to the collective and class members as $54,645.03 before paying the $4,745.03 incentive award and $49,900 after subtracting it. Id. The final payout for each collective and class member is

8

calculated as follows: (collective fund payout + class fund payout) x ($49,900/$54,645.03). Id.

The settlement agreement calls for NPS to deliver the checks and documentation showing applicable withholding for class members and collective members within thirty days of the court's final order (or the date of expiration of the deadline to appeal if there are objections or the date of the resolution of any appeals against the final order). Dkt. No. 41-1 at 12, 13. Class counsel has fourteen days to identify and mail to an alternate address an undeliverable check, and each class or collective member has sixty calendar days to cash the check. Id. at 13. Class counsel advised the court at the fairness hearing that his office would send the checks to class and collective members within a week of receiving the checks and documentation from NPS.

> 3. *The Terms of any Proposed Award of Attorneys' Fees, Including Timing of Payment—Rule 23(e)(2)(C)(ii)*

Class counsel has requested fees and costs in the amount of $32,000, plus the costs of mailing the notice packets and settlement checks ($600).

> 4. *Any Agreement Required To Be Identified Under Rule 23(e)(3)—Rule 23(e)(2)(C)(iv)*

The parties have not identified any agreement other than the agreement itself that must be considered pursuant to Rule 23(e)(3).

D. Equitable Treatment of Class Members—Rule 23(e)(2)(D)

All class members are entitled to their share as calculated under the agreement and will receive the same treatment as similarly-situated class members. This factor weighs in favor of approving the Agreement.

9

E.  The Amount of Opposition to the Settlement—the Seventh Circuit's Third and Fourth Factors

The court is not aware of any opposition to the settlement. No objections were received by class counsel. Dkt. No. 50 at 2. The court received no objections.

F.  The Opinion of Competent Counsel-The Seventh Circuit's Fifth Factor

Both counsel agree that the settlement is fair, reasonable and adequate. Dkt. No. 49 at 1. The settlement was negotiated with the assistance of Judge Duffin. Dkt. No. 38.

G.  Final Approval

After reviewing the settlement agreement and considering all the above factors, the court will grant the joint motion for approval of settlement.

## II. Plaintiff's Motion for Attorneys' Fees and Class Representative Incentive Awards (Dkt. No. 52)

A.  Attorneys' Fees

Rule 23(h) allows the court to authorize fees that are authorized by law or the parties' agreement. FLSA contains a mandatory fee shifting provision. 29 U.S.C. §216(b). In addition, Wis. Stat. §109.03(6) provides that the court may award a prevailing party a reasonable sum for expenses including attorneys' fees. The Seventh Circuit urges courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." In re Synthroid Mktg. Litig. ("Synthroid I"), 264 F.3d 712, 718 (7th Cir. 2001). Courts have the

discretion to use either a percentage of the fund or lodestar methodology. Florin v. Nationsbank of Ga., N.A., 34 F.3d 560, 566 (7th Cir. 1994).

Class counsel has calculated fees using the lodestar method, which is "frequently employed in common fund cases." Harman v. Lyphomed, Inc., 945 F.2d 969, 973 (7th Cir. 1991). To calculate the lodestar, the court "[m]ultipl[ies] the hours reasonably expended by the reasonable hourly rates." Id. at 974. "A reasonable hourly rate is based on the local market rate for the attorney's services." Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014). Class counsel's rate for ERISA litigation runs $190 per hour (which is discounted because the funds provide benefits to employees in unions); however, contingency and wage and hours cases with this counsel have ranged between $200 and $500 per hour. Dkt. No. 52 at 2, 7. Counsel has proposed a multiplier of 1.5 to account for the risk of non-payment, with a rate of $281 per hour for this case. He indicates that he will have spent 110 hours litigating the case (not including the fee petition). Id. at 6. These hours include investigation, drafting and filing the pleadings, discovery (including a Rule 30(b)(6) deposition), motion practice and settlement negotiations. Id. After deducting fees and costs in the amount of $1,660.13, the total fee is $30,939.87 for 110 hours (or $281 per hour). Id.

The award is the equivalent of 36% of the class recovery. The settlement agreement has authorized fees consistent with the retainer agreement between Libna Guzman and class counsel: reimbursement costs plus 1/3 of the net settlement or the amount actually provided by a judgment of settlement

(whichever is larger). Dkt. No. 52 at 3. Class counsel argues that this is the market rate in Southeastern Wisconsin. Id. at 7 (citing Benoskie v. Kerry Foods, 19-cv-684-pp, 2020 WL 5769488, *3 (E.D. Wis. Sep. 28, 2020)).

As for the expenses, Class Counsel asks for $1,660.13 for the filing fee, the service fee, class counsel's travel costs to conduct the Rule 30(b)(6) deposition, the costs of the transcript, the costs of mailing notice packets to prospective class members and the anticipated costs of mailing settlement checks to collective and class members. Id. at 9.

This brings the total award to $32,600, which the court will approve.

B.     Service Award

The plaintiffs ask for an incentive award for representative plaintiff Guzman of $4,745.03, which represents about 5.4% of the common fund recovery. In examining the reasonableness of a requested service award, courts consider: "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). Libna Guzman was the only named plaintiff. She provided payroll records and assisted with the investigation. Dkt. No. 52 at 9. She attended the mediation, assisting with the resolution of this case. Id.

The requested amount is in line with service awards that this court has previously approved. This court has approved service awards of $5,000 in Pintor v. Hypro, Case No. 17-cv-890 (E.D. Wis. 2018), Dkt. No. 52 at 2, and

12

Pintor v. Fall River Group, Case No. 17-cv-865 (E.D. Wis. 2018), Dkt. No. 47 at 2. Judge J.P. Stadtmueller approved a $5,000 service award in Weninger v. General Mills Operations, LLC, No. 18-CV-321-JPS, 2019 WL 1746703 (E.D. Wis. 2019). The court will grant the plaintiffs' motion for approval of a $4,745.03 award in this case.

### III. Plaintiffs' Motion to Seal Document (Dkt. No. 54)

The plaintiffs have asked the court to seal the allocation of payouts to the individual class members. Dkt. No. 54 (referencing dkt. no. 50-2). They argue that the public still will be able to know the total amount of the settlement payment, the allocation percentages, and the methods used to allocate the percentages. Id. The plaintiffs say that sealing the payouts to the individuals is consistent with Seventh Circuit case law. Id. at 1 (citing Koch v. Jerry Bailey Trucking, Inc., No. 1:14-CV-72-HAB, 2021 WL 542366, *1 (N.D. Ind. 2021)).

This court generally considers any document filed to be public and requires that a "motion to seal . . . demonstrat[e] good cause for withholding the document . . . from the public record." General Local Rule 79(d)(1), (3) (E.D. Wis.). Good cause for removing a document from the public record exists only if the document reveals a trade secret, is covered by a recognized privilege (such as the attorney-client privilege) or contains information required by statute to be maintained in confidence. Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 546 (7th Cir. 2002). The strong presumption of public disclosure applies to the materials that formed the basis of the parties' dispute and the district court's resolution. Id. at 548.

The motion does not explain why the court should seal the individual names and allocation amounts. The only case cited in the motion, Koch, mentions that the parties engaged in a two-day settlement conference, that the defendants agreed to make certain payments to the plaintiffs and that the amounts of the payments had been placed under seal. Koch, 2021 WL 542366, at *1. At the fairness hearing, counsel advised the court that the parties had agreed, as part of the settlement, to keep the individual allocations private. The mere fact that the parties have agreed to keep information private does not constitute good cause for sealing. Class counsel also advised the court at the hearing that there was state case law indicating that the class members had a right to privacy, so that marketers or others could not contact them. Because the court was not familiar with that case law, it gave the plaintiffs an opportunity to provide it.

On July 6, 2022, the plaintiffs' counsel provided the court with supplemental authority; he cited three cases in support of the request to "close off public access of the spreadsheet showing payouts for individual and collective class members . . . ." Dkt. No. 56.

Two of the cases the plaintiffs cite involved open records requests made under state or federal statutes. In Kramer Bros. Inc. v. Dane Cty., 229 Wis. 2d 86 (Wis. Ct. App. 1999), a contractor working on a public works project in Dane County sought to prohibit the disclosure of any personally identifying information turned over in response to an open records request. The records contained names, addresses, Social Security numbers, classifications, wages

paid and hours worked. Id. at 89. The Wisconsin Court of Appeals began with the presumption that public records are open to the public unless there is a statutory exception, common law limitation or overriding public interest in keeping the public record confidential. Id. at 93. It instructed the custodian of records to employ a balancing test to determine whether inspection results in harm to the public interest that outweighs the legislative policy allowing inspection. Id. at 94. The court acknowledged the "nature and strength of the public interest favoring disclosure" and cited the various statutes relating to the wage laws. At the same time, the court explained that public employees have a lower expectation of privacy than private contractors. Id. at 102. In finding a privacy interest, the court reasoned that making the names public would mean that they were available to anyone—including those interested in marketing goods and services to employees in the construction trades. Id. The court acknowledged that names alone are not convenient for tracking someone down but suggested that addresses and/or telephone numbers can be obtained for employees once they are identified by name. Id. The court found that the privacy interest in the employees' names, "particularly when coupled with their occupation, wages and hours, and place of employment," outweighed the public interest in the disclosure of the names. Id. at 103.

In Sheet Metal Workers Int'l Assoc. v. United States Dept. of Veterans Affairs, 135 F.3d 891 (3d Cir. 1998), the Third Circuit Court of Appeals addressed a Freedom of Information Act request by a union seeking disclosure of information about a government contractor's employees. A statute required

15

the contractor to include in the payroll records the employee's name, address, Social Security number, classification, hourly rates of wages paid, daily and weekly hours worked, deductions made and actual pay. Id. at 894. The Third Circuit found the employees' privacy interest in the non-disclosure of their names and addresses substantially outweighed the slight public interest identified by the union, specifically find the disclosure of the requested data to be an unwarranted invasion of personal privacy. Id. The Third Circuit reasoned that once the information was released to the union, there was no way to bar others from gaining unlimited access. Id. It speculated that the information requested could be misappropriated by marketers, creditors, solicitors, and commercial advertisers, eroding the employees' expectation of privacy. Id. at 905.

The final case cited by the plaintiffs involves Judge Griesbach's decision to seal certain documents in connection with summary judgment. In Formax Inc. v. Alkar-Rapidpak-MP Equipment, Inc., No. 11-C-0298, 2014 WL 792086 (E.D. Wis. Feb. 25, 2014), Judge Griesbach began by noting that "[m]otions to seal are becoming increasingly common and occupy an increasing portion of the court's time." Id. at *1. The plaintiffs cite this case solely for its holding that a company's "highly sensitive pricing information, sales figures, sales dollar amounts, profit and loss data, and other financial records not normally made known to the public may be properly filed under seal." Id. at *3. The document at issue in this case does not involve any of that type of information.

16

The plaintiffs ask the court to seal the spreadsheet that lists the individual class and collective members and the amount of allocation each of them will receive. That spreadsheet does not contain addresses, telephone numbers, Social Security numbers, job classifications, pay rates or salaries. The amount of the settlement and the calculations used to determine the amount paid the collective members and class members already are public. None of the cases the plaintiffs have cited justify sealing—or even restricting from public view—the entire spreadsheet.

That said, the plaintiffs have provided some authority suggesting that disclosing the names of the individuals who will receive allocations could allow third parties to identify and contact individual collective and class members, possibly invading their privacy. The court concludes that the plaintiffs have shown good cause for restricting from public view the names of the individual class and collective members. But the other information in the spreadsheet—whether an individual chose to opt in, worked holidays, received shift differentials, received bonuses and/or received a payout—does not identify employees or allow them to be tracked down. The court will grant the plaintiffs' motion only to the extent that it will allow the plaintiffs to file a redacted version of the spreadsheet that redacts *only* the names of the employees. The court will order the original spreadsheet restricted to viewing by the court and the parties; the redacted version of the spreadsheet will be accessible to the public.

## IV. Conclusion

The court **GRANTS** the joint motion for final approval of settlement. Dkt. No. 48.

The court **APPROVES** the settlement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure.

The court **APPROVES** the settlement agreement as a fair and reasonable resolution of a *bona fide* dispute under FLSA.

The court **APPROVES** the settlement payments to the settlement class.

The court **ORDERS** that Frank Hayes may join the FLSA collective and receive his portion of the collective fund if he signs and returns a complete opt-in consent form to class counsel by July 22, 2022. If Hayes fails to timely sign and return a complete opt-in consent form by July 22, 2022, the parties must distribute Hayes' allocated portion of the collective fund to other members of the FLSA collective without any further order of the court.

The court **DISMISSES WITH PREJUDICE** the class members' and collective members' claims against the released parties (as defined on page 15 of the settlement agreement) in this case.

The court **GRANTS** the plaintiffs' motion for approval of attorneys' fees and costs. Dkt. No. 51. The court **APPROVES** the requested attorneys' fees and costs in the amount of $32,600.

The court **GRANTS** the plaintiffs' unopposed motion for approval of the class representative incentive award. Dkt. No. 51. The court **APPROVES** the requested payment in the amount of $4,745.03 to Libna Guzman.

18

The court **DENIES** the plaintiffs' motion to seal the spreadsheet at Dkt. No. 50-2. The court **ORDERS** that the clerk's office must change the designation of Dkt. No. 50-2 from "Sealed" to "Restricted," and must restrict the spreadsheet at Dkt. No. 50-2 to viewing by the court and parties only.

The court **ORDERS** that within seven (7) days of this order, the plaintiffs must file a version of the spreadsheet with only the names of the employees redacted. The court **ORDERS** that once filed and docketed, the redacted version of the spreadsheet must *not* be sealed or restricted.

The court **ORDERS** that this case is **DISMISSED** with prejudice and will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 8th day of July, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**